UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:15-cr-190-GEB |
|---|---|
| Plaintiff, | |
| v. | **ORDER** |
| LARRY TODT, | |
| Defendant. | |

On July 9, 2018, Defendant Larry Todt filed a document titled "NOTICE OF RIGHT OF RECISSION, AFFIDAVIT-CONDITIONAL ACCEPTANCE, MOTION TO DISMISS," ECF No. 409 (hereinafter referenced as "Motion"), purportedly in propria persona even though he is represented by counsel. Defendant has not been authorized to represent himself in this criminal action. When a party seeks to represent him or herself at the same time he or she is represented by counsel, that representation is characterized as "hybrid representation." "A district judge may allow 'hybrid representation,' in which the accused assumes some of the lawyer's functions, under certain circumstances." United States v. Turnbull, 888 F.2d 636, 638 (9th Cir. 1989). However, "[i]f the defendant assumes any of the 'core functions' of the lawyer, . . . the hybrid scheme is acceptable only if the

1

defendant has . . . waived counsel." Id. "A waiver of the right to counsel must be knowing and voluntary . . . . If a defendant does not knowingly and voluntarily waive counsel, and does not retain acceptable counsel, the court must appoint counsel." Id.

Defendant indicates in his Motion that he has only "accepted the appointment of [his present] attorney as 'Stand-By-Counsel'" and he "[does] not consent to [his present appointed counsel] Jason Lawley being the Attorney of Record on [his] behalf in regard to these proceedings." Motion at 2. Defendant further indicates, however, that "[he does] not agree to represent [himself] or the Named Defendant in this Matter." Id.

Defendant was found guilty by jury trial of one count of conspiracy to falsely make lending association writings and to commit bank fraud, and one count of bank fraud. See ECF No. 320. Defendant represented himself during the trial of this action until he elected to be represented by his then stand-by counsel, Mr. Lawley. However, following Defendant's convictions at his jury trial, a status hearing was held on March 2, 2018, concerning Defendant's attempt to fire Mr. Lawley. The court had a communication with Defendant at that hearing which ultimately resulted in Defendant being sent to the Federal Bureau of Prisons for a mental competency examination. ECF No. 344. Part of that communication is the following:

> MR. TODT: What I intended to say, sir, is that I do not allow anyone to speak on behalf of Larry Todt. I am the authorized agent for Mr. Todt. Mr. Todt, the defendant, is a fictitious legal person whose name is written in all caps. I am a private citizen. If I believe that some legal response is required on behalf of Mr. Todt, I will authorize myself to respond.

2

1       THE COURT: You're a private citizen?
2       MR. TODT: Yes, sir.
3  Unofficial Transcript of March 2, 2018 Proceeding. The
4  undersigned then asked Defendant biographical questions about the
5  name Todt:
6       THE COURT: You just mentioned Todt.
7       MR. TODT: That is a family name. I could not
        be given a name that already existed, sir.
8       That name was always a family name.
9       THE COURT: Was it your family?
10      MR. TODT: It was not my family until I was --
        I came into the world on May 9th, 1952.
11
        THE COURT: When you came into the world on
12      May 9th, 1952, were you in the Todt family?
13      MR. TODT: I was in the Southeast Missouri
        Hospital.
14
        THE COURT: Was your father's last name Todt?
15      MR. TODT: No, sir. My father does not have a
        last name.   He has a family name.   Only
16      corporations have last names, sir.
17      THE COURT: What was your father's family
        name?
18
        MR. TODT: Todt.
19
        THE COURT: What was your mother's family
20      name?
21      MR. TODT: Moore.
22      THE COURT: Did your mother always go by the
        family name Moore?
23
        MR. TODT: Until -- I can't answer that, sir.
24      I'm not quite sure.
25      THE COURT: Did she ever go by the family name
        Todt?
26
        MR. TODT: She may have.
27
28

                                3

| | |
|---|---|
| 1 | THE COURT: You don't know . . . |
| 2 | MR. TODT: I don't know what her intention was, sir. |
| 3 | |
| 4 | THE COURT: Okay. |
| 5 | MR. TODT: She's dead.  She died while I was in jail. |
| 6 | . . . |
| 7 | THE COURT: . . . If I allow you to proceed pro per, who are you representing? |
| 8 | |
| 9 | MR. TODT: I'm not representing anyone, sir. I would be here in a capacity as the agent -- Larry Todt is -- |
| 10 | |
| 11 | THE COURT: I think you may be -- I think you may be manipulating the proceedings or else you need to be evaluated and so -- |
| 12 | |
| 13 | MR. TODT: Sir. |
| 14 | THE COURT: No.  I think I'm going to send you to be evaluated for competency. |
| 15 | MR. TODT: I don't accept your offer. |
| 16 | THE COURT: Well, you don't have to. You're going because if you are competent and are manipulating the proceedings as I believe you are, that may have a significant bearing on sentencing. And you have done this before, so I'm sending you to be evaluated for competency. |
| 17 | |
| 18 | |
| 19 | |
| 20 | MR. TODT: I don't accept your offer to be sent for evaluation. |
| 21 | |

Unofficial Transcript of March 2, 2018 Proceeding.

Mr. Todt was committed to the Bureau of Prisons for a mental competency evaluation. A portion of the Forensic Evaluation states:

> Based on the information available, there was no objective information or evidence to indicate that Mr. Todt currently suffers from signs or symptoms of a major mental disorder . . . or an organic disorder, that would

> impair his present ability to understand the nature and consequences of the court proceedings against him, or his ability to properly assist counsel in his defense, or to represent himself.
>
> . . . .
>
> On the surface, the defendant's statements and demeanor appear odd and raise the question about the presence of an underlying thought disorder or delusional belief system. However, information obtained for review suggests his writing and statements are consistent with several anti-government organizations that provide the documentation utilized by Mr. Todt, in addition to instructions regarding how to behave verbally. When interpreted within this context, the defendant's behaviors appear goal-directed and motivated by a desired outcome, rather than attributed to the presence of a major mental disorder. Mr. Todt appears to have consciously decided to not participate in the forensic evaluation, and thus it could be inferred, that his lack of cooperation is purposeful and not linked to the presence of persecutory or paranoid beliefs rooted in a major mental illness.
>
> From the available information, there is evidence to suggest that Mr. Todt is able to ascertain reality, realistically appraise his behavior, and converse in a logical and coherent manner, all of which would be necessary, to some extent, to represent himself or to properly assist counsel in a defense. Given his presentation during the evaluation, Mr. Todt will most likely continue to engage in the behavior to avoid sentencing. The behavior is volitional and goal directed and not derived from an underlying mental disorder, but may be disruptive to the Court proceedings.

Sealing Order, ECF No. 386 (quoting Forensic Evaluation of Larry Todt).

Following receipt of Defendant's Forensic Evaluation, he was found to be competent during a hearing held June 29, 2018, following which the undersigned judge attempted to ascertain

whether Defendant desired to represent himself in the action. After a long exchange designed to satisfy Faretta v. California, 422 U.S. 806, 835 (1975), and after near-constant disruption, the following exchange occurred:

> THE COURT: Sir, do you want to represent yourself?
>
> MR. TODT: Sir, I clearly stated that I am here in a non-representative capacity as the beneficiary of the estate that's being administered in this case.
>
> THE COURT: Sir, do you want a lawyer or do you want to proceed without a lawyer?
>
> MR. TODT: I've appointed you as trustee to settle this matter on my behalf. I'm the beneficiary here, sir. I'm requesting that you settle this.
>
> THE COURT: If you don't answer my question I'm not going to let you represent yourself.
>
> MR. TODT: Are you denying my right to subrogation, sir?
>
> THE COURT: That's it. Mr. Lawley, he does have the right to represent himself, but he does not have the right to be disruptive. He can forfeit his right to represent himself if he's being disruptive. And at the moment, he's being disruptive. And so, I would only give him the right and take it away. So, in the future, if he decides not to be disruptive and to represent himself, then you let me know. Right now, . . . he's being argumentative and seeking to look eccentric and saying things that are nonsense.

Unofficial Transcript of June 29, 2018 Proceeding.

The Sixth Amendment to the United States Constitution guarantees not just the right to counsel, but "the right of self-representation." Faretta, 422 U.S. at 832. "The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction." Id. at

834. Before a defendant could be authorized to represent himself, he must first knowingly and intelligently relinquish the benefits associated with the right to counsel. Id. at 835.

> A district court should not grant a defendant's request to waive representation of counsel and serve as his own counsel, without discussing with the defendant, in open court, whether the waiver was knowingly and intelligently made, with an understanding of the charges, the possible penalties, and the dangers of self-representation. This is clearly the preferable procedure and should be followed by district courts in every case.

Lopez v. Thompson, 202 F.3d 1110, 1117 (9th Cir. 2000) (quoting United States v. Harris, 683 F.2d 322, 324 (9th Cir. 1982)).

"A criminal defendant's right to represent himself is not absolute." United States v. Brugnara, 856 F.3d 1198, 1212 (9th Cir.), cert. denied, 138 S. Ct. 409 (2017). "[A] trial judge has discretion to terminate an unduly disruptive defendant's self-representation." Id. (quoting Faretta, 422 U.S. at 834 n.46). The right to self-representation "is not a license to disrupt proceedings." Id. A "trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." Id. (quoting Faretta, 422 U.S. at 834 n.46); see also United States v. Mack, 362 F.3d 597, 601 (9th Cir. 2004) ("[T]he defendant's right to self-representation [does not] overcome[] the court's right to maintain order in the courtroom and conduct proceedings in a manner consonant with our trial traditions.").

A defendant's "request to represent himself [cannot] be denied solely because he adhere[s] to [sovereign citizen

7

beliefs]." United States v. Neal, 776 F.3d 645, 658 (9th Cir. 2015). But the waiver must still be knowing and intelligent, id., and adhering to sovereign citizen beliefs is not license to engage in obstructive or abusive behavior, see United States v. Glover, 715 F. App'x 253, 255–56 (4th Cir. 2017), cert. denied, 138 S. Ct. 1454 (2018).

In Neal, the Ninth Circuit affirmed a trial court's decision to find that the defendant, who "endorsed the 'sovereign citizen' ideology," had nonetheless knowingly and intelligently waived his right to counsel. 776 F.3d at 658–59. There, "[t]he evidence demonstrate[d] that Neal knew exactly what he was doing and made the choice to represent himself with eyes open." Id. at 659. The defendant's behavior in Neal, however, is distinguishable from Defendant's behavior here. In Neal, the defendant,

> was insistent in his desire to represent himself. Neal assured the court he had no questions and that he understood the pitfalls of representing himself. When the court finally asked Neal, in light of the penalty if he was found guilty, whether he still wished to represent himself and give up his right to be represented by counsel, Neal responded "absolutely."

776 F.3d at 658. Here, in contrast, Defendant has refused to acknowledge that he is the Defendant in this criminal case, and insists he is not requesting to represent himself, but rather to act as the executor of some estate which he wrongly espouses to exist in this case. See ECF No. 409, at 1 of 1 ("I Larry Allen of the Family of Todt appearing in Propria Persona as EXECUTOR of the ESTATE named in this matter by making a Special Appearance only, and not Generally, . . . stand before the court in a Non-

8

1  Representative capacity."). Defendant's Motion reveals he is
2  committed to this course of gibberish communications, and he
3  clearly states both that he "[does] not consent to [his present
4  appointed counsel] Jason Lawley being the Attorney of Record on
5  [his] behalf," and that he "[does] not agree to represent
6  [himself] or the Named Defendant in this Matter." Motion at 2.

7         The Eleventh Circuit confronted a somewhat similar
8  issue en banc in United States v. Garey, 540 F.3d 1253 (11th Cir.
9  2008), and its opinion is instructive. There, the Eleventh
10 Circuit wrote:

> This case requires us to address the situation in which an uncooperative defendant adamantly and knowingly rejects the competent counsel to which he is constitutionally entitled, but also refuses to invoke affirmatively his right to self-representation.
>
> . . .
>
> . . . [T]he right to counsel is intended as a tool, not a tether. "[I]t is one thing to hold that every defendant ... has the right to the assistance of counsel, and quite another to say that a State may compel a defendant to accept a lawyer he does not want." Faretta, 422 U.S. at 833, 95 S.Ct. at 2540. For that reason, it has long been established that a criminal defendant may waive the right to counsel when he does so intentionally and knowingly. See, e.g., [Johnson v. Zerbst, 304 U.S. 458, 464 (1938)]
>
> Less clear are the means by which a defendant may waive his right to counsel. In Faretta, the Supreme Court recognized the right to self-representation in the context of deciding whether a defendant who had asked to represent himself and had demonstrated a rudimentary knowledge of legal procedure was entitled to proceed pro se. In determining he was, the Court noted, "The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the [Sixth] Amendment, [wi]ll

9

be an aid to a willing defendant-not an organ of the State interposed between an unwilling defendant and his right to defend himself personally." Faretta, 422 U.S. at 820, 95 S.Ct. at 2533. Faretta's recognition of the right to self-representation was grounded in respect for a defendant's free choice. "The right to defend is personal," for it is "[t]he defendant, and not his lawyer or the State, [who] will bear the personal consequences of a conviction." Id. at 834, 95 S.Ct. at 2540-41.

It is important to remember that Faretta's discussion of the right to self-representation presupposed a cooperative defendant willing to engage in reciprocal dialogue with the court. The Supreme Court has never confronted a case in which an uncooperative defendant has refused to accept appointed counsel or engage in a colloquy with the court. Consequently, the Court has never been asked to determine whether a defendant may waive counsel without making an explicit, unqualified request to represent himself.

. . .

. . . When confronted with defendants who, by their words and conduct, reject both appointed counsel and self-representation, several of our fellow circuits have concluded that a litigant may waive his right to court-appointed counsel not only by expressly invoking the right to self-representation, but also by engaging in conduct that evinces a knowing desire to reject the counsel to which he is entitled. See King v. Bobby, 433 F.3d 483, 492 (6th Cir.2006); United States v. Massey, 419 F.3d 1008, 1010 (9th Cir.2005); United States v. Oreye, 263 F.3d 669, 670-71 (7th Cir.2001); McKee v. Harris, 649 F.2d 927, 931 (2d Cir.1981). But see Fischetti v. Johnson, 384 F.3d 140, 146 (3d Cir.2004) (suggesting only dilatory behavior or other misconduct might justify waiver by conduct). These courts hold that a defendant who rejects appointed counsel but refuses to cooperate with the court by affirmatively expressing his desire to proceed pro se, effectively chooses self-representation by rejecting the only other choice to which he is constitutionally entitled. The reasoning behind this approach is simple:

10

> The question of waiver is one of inference from the facts. As a matter both of logic and of common sense . . . if a person is offered a choice between three things and says "no" to the first and the second, he's chosen the third even if he stands mute when asked whether the third is indeed his choice.

Oreye, 263 F.3d at 670-71. Garey, 540 F.3d at 1253-64.

Defendant's Motion is construed as his request to proceed without counsel. Considering the discussion in Garey and Oreye that the question of waiver is one of inference to be drawn from the facts, Defendant's request to proceed without counsel is scheduled for hearing on Friday, August 24, 2018, commencing at 9:00 a.m. Any party may file a brief with any information opined to be pertinent to the issues on or before Wednesday, August 22, 2018.

Dated: August 15, 2018

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge

11